UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

---

SAMPSON CLARK,

                      Plaintiff,

v.                                                  Case No.  3:19cv00152

GOODWILL OF CENTRAL AND
COASTAL VIRGINIA, INC.,
SERVE:   Jason W. Harbour, Registered Agent
            Hunton & Williams LLP
            951 E. Byrd Street                DEMAND FOR JURY TRIAL
            Richmond, VA 23219

                      Defendant.

---

## COMPLAINT

---

Plaintiff Sampson Clark respectfully moves for judgment against Defendant Goodwill of Central and Coastal Virginia, Inc. ("Goodwill" or "Defendant") as follows:

## I.     SUMMARY OF ACTION

1.     This is a claim for unpaid overtime in violation of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, et seq., ("FLSA"). Plaintiff seeks unpaid overtime, liquidated damages, and attorneys' fees and costs arising out of the Defendant's FLSA violations.

## II.    JURISDICTION AND VENUE

2.     This Court has jurisdiction pursuant to 29 U.S.C. § 216(b) in that the Plaintiff may bring this action in any appropriate United States District Court.

3.     Venue is proper for this Court pursuant to 28 U.S.C. § 1391 and Local Rule 3(B)(4) and (C) since the acts and omissions giving rise to this lawsuit have taken place in this

1

division in the Eastern District of Virginia.

4.    Defendant is subject to personal jurisdiction in the Commonwealth of Virginia.

## III.    PARTIES

5.    Clark is a resident of Virginia who was employed by Defendant as a Recruiter.
Plaintiff was an "employee" as defined in the FLSA.

6.    Defendant Goodwill of Central and Coastal Virginia is a Virginia corporation
with its principal office at 6301 Midlothian Turnpike, Richmond, VA 23225. Defendant is an
"employer" as defined by the FLSA.

7.    Plaintiff is informed, believes, and thereon alleges that Defendant's gross annual
sales made or business done is $500,000.00 or greater. Defendant operates in interstate
commerce by, among other things, buying and/or selling goods and transacting business in
multiple states, and/or by having employees handling, selling, or otherwise working on goods or
materials that have been moved in or produced for commerce in multiple states.

## IV.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

8.    On or about October 11, 2018 Clark filed with the Equal Employment
Opportunity Commission a Charge of Discrimination regarding issues in his employment with
Goodwill (the "Charge"). The Charge was assigned Charge No. 438-2019-00046. The Charge
alleged, among other things, that Clark was subjected to racial discrimination during his
employment with Goodwill. As of the filing of this Complaint, Clark has not received a Notice
of Suit Rights with respect to the Charge. Clark reserves the right to amend this Complaint to
assert potential racial discrimination claims under Title VII of the Civil Rights Act, 42 U.S.C.
§1981, and/or other claims related to his employment with Goodwill.

## V.    FACTUAL ALLEGATIONS

9.      From approximately July 2012 through October 2018 Clark worked for Goodwill in its corporate office in Richmond, Virginia. During the time period of approximately August 1, 2016 to May 16, 2018, Clark worked for Goodwill in a position called "Recruiter."

10.     The job duties of the Recruiter position involved providing assistance in recruiting new employees to come work for Goodwill. This included posting job openings, screening resumes, administering drug tests and background checks, communicating with candidates and Goodwill stores and departments, taking phone calls, and scheduling and conducting approximately 30-40 interviews per week, among other related job duties.

11.     As a Recruiter, Clark was paid an hourly wage ranging from $18.67 to $19.51 per hour. From approximately 8/1/2016 to 9/16/2016 (47 days; 6 weeks) Clark was paid $18.67 per hour. From approximately 9/17/2016 to 7/7/2017 (294 days; 42 weeks) Clark was paid $19.04 per hour. From approximately 7/8/2017 to 5/16/2018 (313 days; 45 weeks) Clark was paid $19.51 per hour.

12.     The Recruiter before Clark was a white male, Carl Slate. As the Recruiter Mr. Slate was paid an annual salary of approximately $47,000. Clark replaced Slate in the Recruiter position after Slate was promoted to the position of Talent Acquisition Manager. When Clark replaced Slate in the Recruiter position, Clark's pay ranged from $18.67 to $19.51 an hour, which works out to about $39,000 per year not including overtime pay. This was significantly less than Goodwill had paid Slate to perform the same job. After Clark left the Recruiter position, he was replaced by a white male, Justin West. It is Clark's understanding that as the Recruiter, Mr. West was paid an annual salary of approximately $47,000. This is significantly more than Clark was paid to perform the same job.

13.     Clark was regularly scheduled to work 40 hours per week.

3

14.     Clark routinely worked through lunch, stayed late, and worked on weekends.

15.     This resulted in Clark typically working considerably more than 40 hours per week.

16.     However, Clark's supervisor discouraged Clark from recording more than 40 hours per week on the timeclock, so that Goodwill could avoid paying overtime compensation. Clark was also threatened with being written up and disciplined if he recorded more than 40 hours per week on the timeclock, so that Goodwill could avoid paying overtime compensation.

17.     More specifically, throughout Clark's employment as a Recruiter, Clark regularly and routinely worked approximately 12 hours in excess of 40 hours per week off the clock, and was not paid overtime or other compensation for those 12 hours per week. The reason Clark worked these off-the-clock overtime hours each is week is that Clark's supervisor told him that (A) Clark needed to work these hours in excess of 40 per week in order to adequately perform his job duties, and (B) Clark should not record more than 40 hours per week on Goodwill's timekeeping system, because if Clark recorded more than 40 hours per week he could be written up and disciplined.

18.     Throughout Clark's employment as a Recruiter with Goodwill, he regularly and routinely worked more than 40 hours per week on the clock, plus approximately 12 hours per week off the clock. Clark's supervisor during this period, Mr. Slate, knew or should have known Clark worked these approximately 12 hours weekly off the clock, and the need for Clark to work those hours to perform his job duties was something Clark and Slate regularly discussed. However, Clark did not receive any overtime compensation for the time he worked off the clock. Clark did not receive any compensation at all for the time he worked off the clock.

19.     Goodwill provided Kronos software for Clark and other employees to clock in

4

and out at work. One Kronos device was located near the main entrance to the corporate office, and another Kronos device was located near a side entrance to the corporate office. Clark typically used the Kronos device located near the main entrance. Clark worked on the first floor, which was the same floor on which the Kronos devices were located. Goodwill also provided Kronos software that made it possible to clock in and clock out using laptops or cells phones.

20.     Clark's supervisor, Mr. Slate, instructed Clark that he was not permitted to clock more than 40 hours per week, although Slate acknowledged that he knew Clark needed to work more than 40 hours per week in order to fully perform his job duties. Slate told Clark that if he clocked more than 40 hours in a week, he could be written up for working overtime without having the overtime approved in advance. Slate also told Clark that he needed to work more than 40 hours per week to do his job, because there was "no way" to keep up with the demands of the Recruiter position by working only 40 hours per week.

21.     On a typical week day, Clark arrived at work and clocked in at approximately 8:30-9:00am. On most weekdays, with Mr. Slate's knowledge, Clark clocked out around lunch time but instead of taking a lunch break he worked for all or most of the period that he was clocked out. On approximately three days per week, Clark clocked out for lunch for approximately one hour, but worked through that hour instead of leaving for lunch. On approximately two days per week, Clark would clock out for lunch for approximately two hours, but worked through all or most of those two hours instead of taking a lunch break. Sometimes, approximately at least twice a week, Clark brought his lunch and ate at his desk while he worked off the clock. Approximately at least twice a week, Clark did not eat lunch at all and just continued to work off the clock during the lunch period. Rarely, once a week or less, Clark would leave the office and get lunch for part of the lunch period when he was clocked out, but

would then return and continue working for another hour or more off the clock before clocking back in.

22.     Clark's supervisor saw Clark eating and working at his desk rather than taking breaks for lunch.

23.     The reason Clark worked off-the-clock during lunch periods was that he needed to do the additional work to fulfill his job requirements, but his supervisor told him he could be written up if he worked on the clock for more than 40 hours in a week. On average, during the time that Clark worked as a Recruiter, he worked off the clock during weekday lunch periods approximately five (5) or more hours per week.

24.     Approximately four days per week (Monday through Thursday), Clark would clock out at around 6:00pm but would continue working off the clock in the office until 6:30pm or 7:00pm. On Fridays, Clark would typically clock out at approximately 2:30pm but would continue working in the office until about 4:30pm.

25.     Clark's supervisor saw Clark stay at the office and continue working after clocking out in the evenings rather than leaving for the day. At other times, Clark's supervisor called the office and spoke with Clark on the phone while Clark was continuing to work at the office after clocking out rather than leaving for the day.

26.     The reason Clark clocked out before he completed working at night is that (as his supervisor knew) Clark needed to work additional time to fulfill his job requirements, but his supervisor told him he could be written up if he worked on the clock for more than 40 hours in a week. On average, during the time that Clark worked as a Recruiter, he worked off the clock after clocking out at the end of the weekday approximately four and a half (4.5) hours per week (2.5 hours per week from Monday to Thursday, plus 2 hours per week on Friday).

27.     Clark's supervisor knew or should have known Clark worked off the clock during lunch periods and after clocking out on weekdays because he and Clark frequently discussed the fact that Clark had to work off the clock on weekdays, and Clark's supervisor was typically there with Clark at the office and observed him working off the clock.

28.     Clark also worked off the clock on weekends. On a typical Saturday, Clark would work from home approximately one and a half (1.5) to two (2) hours off the clock. The job duties Clark performed on Saturdays were typically answering phone calls from Goodwill departments regarding candidates and job openings, reviewing resumes, and reviewing drug test results. Clark did not typically clock in on Saturdays because by that time of the week he usually had already clocked 40 or more hours for the week, and his supervisor told him he could written up if he worked on the clock for more than 40 hours in week.

29.     On a typical Sunday, Clark would work approximately three (3) hours from home. Sunday was the first day of Goodwill's workweek for payroll purposes. On a typically Sunday Clark would work about two (2) hours on the clock, then clock out and work another one (1) hour or so off the clock. The job duties Clark performed on Sundays were typically making job offers to candidates by phone, closing out internal requests and orders to fill positions, doing paperwork for new employee orientations, and emailing stores to help prepare them for new employee orientations. On average, during the time that Clark worked as a Recruiter, Clark worked off the clock on Sundays approximately one (1) hour per week.

30.     The reason Clark clocked out before he completed working on Sundays is that (as his supervisor knew) Clark needed to work additional time to fulfill his job requirements, but his supervisor told him he could be written up if he worked on the clock for more than 40 hours in a week. So Clark tried to manage his on-the-clock hours to keep his on-the-clock hours at 40 hours

per week.

31.     Clark's supervisor knew or should have known Clark worked Saturdays and Sundays off the clock because they frequently discussed the fact that Clark had to work on the weekends. Regularly, the work phone calls Clark took on weekends were phone calls with his supervisor.

32.     In summary, on a typical week during his time as a Recruiter, Clark worked approximately twelve (12) hours off the clock, all of which were typically in excess of 40 hours worked on the clock that week. These 12 off-the-clock hours per week consisted of approximately five (5) hours during lunch periods, four and a half (4.5) hours on weekday and Friday evenings, one and a half (1.5) hours on Saturdays, and one (1) hour on Sundays.

33.     During the approximately 93 weeks (654 days) that Clark worked for Goodwill as a Recruiter (August 1, 2016 to May 16, 2018), Clark worked approximately 1,116 hours off the clock. This is calculated by multiplying twelve (12) off-the-clock hours per week times 93 weeks (12 * 93 = 1,116). Clark typically worked these hours in addition to working on the clock approximately 40 hours or more each week.

34.     Clark's supervisor discouraged Clark from reporting his overtime hours so that Goodwill could avoid paying him overtime compensation.

35.     Clark worked overtime hours off the clock based on his supervisor's statements that he could be written up and disciplined if he clocked more than 40 hours in a week.

36.     Clark and his supervisor routinely discussed the need for Clark to work overtime hours in order to perform his job duties. Clark's supervisor told him there was "no way" to do the job Clark was doing without working more than 40 hours in a week.

37.     Goodwill knew or should have known that Clark was working overtime hours

without being paid.

38.     When Clark was at his work station, Goodwill's instant messaging Skype system showed him as being active.

39.     On several occasions, Clark and his supervisor exchanged these instant messages, as well as text messages and phone calls, outside of his regular hours.

40.     Clark routinely sent work emails before, after, and outside of his regularly scheduled hours.

41.     Clark sent work emails as late as 10:30pm, including emails to his supervisor. Clark's supervisor never told Clark not to work that late.

42.     As a Recruiter, Clark was paid on an hourly basis.

43.     Goodwill suffered and/or permitted Clark to work more than forty hours per week without overtime compensation.

44.     As a Recruiter, Clark was not employed in any bona fide executive, administrative, or professional capacity.

45.     Based on the nature of Clark's job duties and hourly pay as a Recruiter, there is no FLSA exemption that applies to preclude him from being paid one and one-half times his regular rate of pay for all hours worked in excess of 40 per week.

46.     Goodwill willfully violated the FLSA by discouraging Clark from reporting hours worked to knowingly avoid paying overtime.

47.     At all relevant times Defendant intended to deprive Plaintiff of the overtime pay he was entitled to under the FLSA, or acted with reckless disregard for Plaintiff's rights under the FLSA.

**VI.     CLAIMS**

## COUNT 1: VIOLATIONS OF FAIR LABOR STANDARDS ACT
### (Overtime Violations)

48.     Plaintiff alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

49.     At all times relevant herein, Defendant has been, and continues to be, an "employer," and Plaintiff has been, or continues to be, an "employee" within the meaning of 29 U.S.C. §§ 203(d) and (e).

50.     The FLSA requires covered employers, such as Defendant, to compensate all non-exempt employees at a rate not less than one and one-half times their regular rate of pay for work performed in excess of forty hours per week. 29 U.S.C. § 207. As such, Plaintiff is entitled to overtime compensation at one and one-half times his regular rate of pay for work performed in excess of forty hours per week.

51.     By failing to compensate Plaintiff with overtime compensation for his overtime hours worked, Defendant has violated, and continues to violate the FLSA.

52.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

53.     Plaintiff seeks damages in the amount of Plaintiff's unpaid overtime wages, an equal amount as liquidated damages, interest, all costs and attorneys' fees incurred in investigating and prosecuting this claim, all other relief available under the FLSA, and all other such legal and equitable relief as the Court deems just and proper.

## PRAYER FOR RELIEF

Wherefore, Plaintiff requests the following Relief against Defendant:

A.     Judgment that Plaintiff was a non-exempt employee entitled to protection under the FLSA;

10

B.      Judgment against Defendant for violations of the overtime provisions of the

FLSA;

C.      Judgment that Defendant's violations as described above were willful;

D.      Money damages for all unpaid overtime compensation;

E.      Liquidated damages in an amount equal to all unpaid overtime owed to Plaintiff;

F.      Pre-judgment and post-judgment interest;

G.      Reasonable attorneys' fees and costs expended in the prosecution of this case and

the investigation that preceded it;

H.      Leave to amend to bring additional claims and/or parties, including but not

limited to claims for unpaid minimum wages under the FLSA and /or claims for

racial discrimination;

I.      Any and all further relief permissible by law,

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a jury trial for all

claims and issues so triable.

Respectfully submitted,

SAMPSON CLARK,
By Counsel

Dated:          March 7, 2019

/s/Timothy Coffield
Timothy Coffield (VSB 83430)
COFFIELD PLC
106-F Melbourne Park Circle
Charlottesville, VA 22901
p: (434) 218-3133  f: (434) 321-1636
tc@coffieldlaw.com

Counsel for Plaintiff

11

## CERTIFICATE

I HEREBY CERTIFY that a true and correct copy of the foregoing Complaint will be delivered to a qualified process server with instructions to serve the same upon the Defendant or its authorized agents at the following address:

> Jason W. Harbour, Registered Agent
> Hunton & Williams LLP
> 951 E. Byrd Street
> Richmond, VA 23219

/s/Timothy Coffield
Counsel for Plaintiff